UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARK JOHNS,

        Petitioner,

v.                                              Case No.: 5:23-cv-293-WWB-PRL

WARDEN, FCC COLEMAN – USP II,

        Respondent.
_____/

## ORDER

Petitioner Mark Johns, an inmate of the federal penal system, initiated this action by filing a *pro se* petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). In his Petition, Petitioner seeks to challenge a disciplinary hearing that occurred in 2022 while he was incarcerated at Federal Correctional Complex Coleman I ("**FCC Coleman**"). (Doc. 1 at 2). Specifically, he challenges his security classification and the loss of good conduct time resulting from this disciplinary hearing. (*Id*.). Petitioner raises four grounds as bases for his challenge: (1) a violation of his Fourteenth Amendment and due process rights because he was denied a copy of the disciplinary hearing officer's ("**DHO**") report; (2) "Equal Access" and due process violations because he was not provided with administrative remedy or appeal forms; (3) First and Eighth amendment violations for being written up when requesting to be housed in protective custody; and (4) a due process violation based on the rule, for which he received the incident report, being too vague. (*Id*. at 6–7). As relief, Petitioner seeks restoration of the "good time they took from [him]," a lower security level so that he can be confined in less restrictive housing, and expungement of the incident report from his record. (*Id*. at 7).

Respondent, the Warden of FCC Coleman – USP II, seeks dismissal of the Petition due to Petitioner's failure to exhaust his administrative remedies, or alternatively, denial of the Petition because Petitioner has received all required due process.  (Doc. 7 at 1).  Despite being afforded the opportunity to do so, Petitioner did not file a reply to Respondent's Response.  This matter is ripe for review.

I.  **BACKGROUND**

On March 3, 2022, Petitioner was sentenced to seventy-two months incarceration, followed by eight years of supervised release, for one count of conspiracy to distribute and possess with intent to distribute five grams or more of methamphetamine and fifty grams or more of a mixture and substance containing methamphetamine.  See *United States v. Johns*, No. 4:20-cr-56-RH-MAF, Doc. 136 (N.D. Fla. March 3, 2017).  Petitioner is currently scheduled to be released from custody on July 8, 2025.  See Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 21, 2024).

On June 6, 2022, while incarcerated at FCC Coleman, Petitioner was charged with refusing a work or program assignment.  (Doc. 7-1 at 7).  At approximately 10:15 a.m., Petitioner was ordered to return to a general population housing unit, but he refused.  (*Id*.).  After refusing to accept his general population housing assignment, Petitioner was informed an incident report would be written.  (*Id*.).  That same day, this incident was investigated by Lieutenant McIntyre who advised Petitioner of his rights.  (*Id*. at 9).  After confirming he understood his rights, Petitioner was asked whether he wished to provide a statement.  (*Id*.).  Petitioner stated, "Thank you, sir" but made no other statements regarding the incident.  (*Id*.).  At the conclusion of his investigation, Lieutenant McIntyre determined Petitioner was correctly charged with refusing a work or housing assignment,

a violation of Federal Bureau of Prisons ("**BOP**") Code 306 and forwarded the report to the Unit Discipline Committee ("**UDC**") for further disposition. (*Id*.). The incident report for this incident was delivered to Petitioner on June 6, 2022, at 11:52 a.m. (*Id*. at 7).

On June 8, 2022, the UDC reviewed the incident and referred the charge to the DHO for further hearing. (*Id*. at 8). The UDC's decision was based on the frequency of the charge, with this charge being Petitioner's "third order out[.]" (*Id*.). Also on June 8, 2022, Petitioner was provided and signed a Notice of Discipline Hearing Before the DHO, Inmate Rights at Discipline Hearing, and Waiver of Appearance. (*Id*. at 11, 13, 15). Petitioner waived his right to appear at the DHO hearing, (*id*. at 11), and waived his right to a staff representative and to call witnesses on his behalf, (*id*. at 13).

Petitioner's disciplinary hearing was held on June 14, 2022, at 9:35 a.m. (*Id*. at 17). Petitioner's rights were reviewed with him at the time of the hearing and after confirming he understood his rights, he stated he had no documentary evidence to provide and again waived his right to call witnesses and have a staff representative to assist him with the hearing. (*Id*.). Petitioner admitted to the charge before the DHO, stating "the report is true." (*Id*. at 19). After reviewing the incident report, Petitioner's admission, and the threat assessment conducted by the SIS department—which indicated Petitioner should be ordered to return to general population housing—the DHO found Petitioner committed the prohibited act of refusing a program assignment in violation of Code 306. (*Id*.). As a result, the DHO sanctioned Petitioner by disallowing twenty-seven days of good conduct time and imposed a loss of commissary and visitation privileges for ninety days. (*Id*.). Petitioner was provided with a copy of the DHO report on June 22, 2022, at 7:00 a.m. (*Id*.).

II. **ANALYSIS**

Habeas is the "exclusive remedy" for prisoners seeking "immediate or speedier release from confinement." *Skinner v. Switzer*, 562 U.S. 521 (2011); *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973). The only relief that can be gained in a habeas action is an immediate or speedier release. *See Rose v. Mitchell*, 443 U.S. 545, 586 (1979) (Powell, J., concurring with the judgment and noting that "the very purpose of the Great Writ is to provide some means by which the legality of an individual's incarceration may be tested"); *see also Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979) (noting that the "sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose").[1]

A. **Exhaustion**

Before seeking relief in a § 2241 proceeding, an inmate must exhaust all available administrative remedies. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015). Although exhaustion of administrative remedies is not a jurisdictional requirement, "that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense." *Id*. at 475. A court, however, "may skip over the exhaustion issue if it is easier to deny . . . the petition on the merits without reaching the exhaustion question." *Id*. Here, the Court has determined that addressing

---

[1] In *Bonner v. City of Pritchard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

the merits of the petition without addressing the exhaustion requirement is appropriate. *See id*.

### B. Conditions of Confinement Claims

Challenges to federal prison disciplinary proceedings may address either the conditions of confinement or the fact or duration of the sentence. *See Preiser*, 411 U.S at 489, 498. Disciplinary actions that affect only the conditions of confinement are not considered unlawful imprisonment subject to habeas unless the conditions affect the fact or duration of the sentence. *See Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) ("Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law.") (citing *Nelson v. Campbell*, 541 U.S. 637, 644 (2004)). A prison disciplinary action that results in the loss of good conduct time affects the duration of a sentence and, therefore, may be challenged under § 2241. *See Santiago-Lugo*, 785. F.3d at 469–70. However, a civil rights complaint is the appropriate avenue for relief for a prisoner "who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser*, 411 U.S. at 499.

Thus, the Court finds that to the extent Petitioner raises constitutional challenges concerning his conditions of confinement, such claims are not cognizable under 28 U.S.C. § 2241. Specifically, Petitioner's claims for relief regarding his security classification, housing assignment, and the alleged violations of his First and Eighth amendment rights do not affect the fact or duration of his confinement and must therefore be dismissed.

### C. Due Process Claims

Prison disciplinary proceedings are not part of a criminal prosecution, and, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, inmates are entitled to some due process protections in these proceedings. *Id*. Those protections include: (1) written notice of the charges at least twenty-four hours before a hearing to enable the inmate to prepare a defense; (2) an opportunity to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety; and (3) a written explanation of the evidence relied on and reasons for disciplinary actions. *Id*. at 559. On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. *Id*. at 567, 570.

Additionally, in the disciplinary context, a decision comports with the requirements of procedural due process when there is "some evidence" to support the fact finder's disciplinary decision. *Superintendent, Mass. Corr. Institution v. Hill*, 472 U.S. 445 (1985). In other words, the relevant question is whether "any evidence" supports the conclusion reached by the prison officials. *Id*. at 455–56; *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994). Notably, the scope of this Court's review of prison disciplinary actions is limited. *Hill*, U.S. at 455–56; *Young*, 37 F.3d at 1460. It does not require an examination of the "entire record" or reweighing the evidence. *Hill*, 472 U.S. at 455–56. "The clear implication of *Hill* is that courts are not to conduct exhaustive reviews of findings of prison disciplinary panels." *O'Bryant v. Finch*, 637 F.3d 1207, 1214 (11th Cir. 2011).

A federal court's review of a prison disciplinary proceeding is limited "to determin[ing] whether an inmate receives the procedural protections provided by *Wolff*

and whether 'some evidence' exists which supports the hearing officer's determination." *Young*, 37 F.3d at 1460.  Neither "a disciplinary board's factual findings [n]or [its] decisions with respect to appropriate punishment are subject to second guessing upon review." *Hill*, 472 U.S. at 455–56.

Here, contrary to his assertions, Petitioner was provided with all the due process the law requires during his disciplinary hearing proceedings.  Petitioner was given a copy of the incident report, which provided him with notice of the charge and the facts supporting the charge on June 6, 2022.  (Doc. 7-1 at 7).  Then on June 8, 2022, Petitioner was given and signed both a Notice of Discipline Hearing Before the DHO and a copy of his rights.  (*Id*. at 13, 15).  Petitioner's DHO hearing was not held until June 14, 2022, which gave him more than the twenty-four hours' advance notice required under *Wolff*.  (*Id*. at 17–19).  Petitioner was also provided with, yet declined, the opportunity to have a staff representative to represent him at the hearing, call witnesses on his behalf, and present evidence.  (*Id*.).  And though Petitioner asserts his due process rights were violated because he was denied a copy of the DHO report and findings, the record reflects that on June 22, 2022, at 7:00 a.m., Petitioner was provided with a copy of the DHO report which discussed the evidence, the DHO's findings, and the reasons for the DHO's decision.  (Doc. 7-1 at 17–19).

Further, not only did Petitioner receive due process as required pursuant to *Wolff*, the record also clearly shows that there was sufficient evidence to support the DHO's decision. Ascertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of credibility of witnesses, or weighing of the evidence.  *Hill*, 472 U.S. at 455–56.  "Instead, the relevant question is

7

whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*.

Here, the evidence presented at Petitioner's disciplinary hearing and relied upon by the DHO was sufficient to meet the "some evidence" standard for purposes of the Court's review. The DHO relied upon Petitioner's admission, the written report, and the threat assessment conducted by the SIS department in reaching its findings. (Doc. 7-1 at 19). As indicated by the report, a threat assessment was conducted, and Petitioner was ordered to return to general population. (*Id*.). When ordered to return to general population, Petitioner refused, and admitted to doing so by stating to the DHO "the report is true." (*Id*.).

Thus, the Court finds Petitioner has received adequate due process in his disciplinary proceedings, and the decision of the DHO is supported by some evidence. Therefore, the Petition will be denied.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition (Doc.1) is **DENIED with prejudice**.
2. The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Orlando, Florida, on December 3, 2024.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties